## Brown *v.* Brown.

### Opinion delivered May 27, 1918.

1. DEEDS—DELIVERY TO THIRD PERSON WITH DIRECTIONS.—Where a deed, fully executed and so drawn as to convey a present title, is deposited by the grantor with a third person with directions to deliver it to the grantee after the death of the grantor, and the grantor reserves no dominion or control over the deed, the deed is not an attempted testamentary disposition but is effective as a conveyance of the title as of the date when the deed is deposited.

2. DEEDS—DELIVERY TO THIRD PERSON—DECLARATIONS OF GRANTOR.— A grantor executed a deed, delivering the same to his wife, with directions to deliver the deed to the grantee, his son, at his death. *Held*, testimony of witnesses as to the declarations of the grantor after the execution of the deed to his son, and in his son's absence, are not admissible to defeat the deed.

3. DEEDS—ACTION TO CANCEL—STATEMENTS OF GRANTOR.—In an action to set aside the deed, referred to above, the widow of the grantor was joined as defendant with the grantee in an action by the grantor's administrator to cancel the deed. *Held*, she being only a nominal defendant, and not interested in the result of the suit, that she could testify against the plaintiff as to transactions with or statements of the grantor.

4. EVIDENCE—DIRECTIONS OF GRANTOR TO HIS WIFE—DELIVERY OF DEED—CONFIDENTIAL COMMUNICATIONS.—A grantor executed a deed to his son, delivering it to his wife, with directions to deliver the same to the grantee upon the grantor's death. *Held*, the widow could testify as to statements of, or transactions with the grantor relative to the execution and delivery of the deed, the same being as to business transactions had in the presence of a third party and which were not confidential communications.

Appeal from Fulton Chancery Court; *Geo. T. Humphries;* Chancellor; affirmed.

*C. E. Elmore,* for appellant.

1.   The deed was not to take effect until after the death of the grantor and is in the nature of a will.   2 Bl. Com. 499; 127 U. S. 309.   As a will it is void.   98 Ark. 466; 93 *Id.* 324; 100 *Id.* 427; 126 *Id.* 183; 75 S. W. 672.

2.   It was not delivered during the lifetime of the grantor.   110 Ark. 425; 100 *Id.* 427, 432; 98 *Id.* 466.

3.   There was no consideration and the estate is insolvent.

*Lehman Kay* and *Ellis & Jones,* for appellees.

1.   The declarations of T. J. Brown made after delivery of the deed were incompetent.   50 So. Rep. 148; 58 *Id.* 435; 41 L. R. A. 258; 53 So. Rep. 812; 96 Ark. 171. No evidence oral or written against the validity of a deed is admissible unless it is part of the *res gestae.* Kirby's Dig. § 3093.

2.   The widow's testimony was competent.   12 Enc. of Ev. 762.   As to competency of witnesses, see K. & C. Dig. § § 7437, 7519, 7521, 7443, 7444-5, etc; 41 Ark. 88; 34 *Id.* 391; 32 *Id.* 495; 93 *Id.* 447; 99 *Id.* 386.

3.   The competent testimony shows delivery of the deed.   74 Ark. 104; 110 *Id.* 425; 38 L. R. A. 288; 41 *Id.* 258.

4.   The deed was accepted by a third person for the minor and afterwards duly delivered in person.   38 L. R. A. 238; 16 S. W. 497; 77 Ark. 89.

5.   The findings of the chancellor are not against the clear preponderance of the testimony.   100 Ark. 432.

6.   Appellant has no right to recover. 22 Ark. 453; 46 *Id.* 373; Kirby's Digest, § § 79, 186-7.

7.   The deed was *in praesenti,* duly extended and delivered.   38 L. R. A. 238; 41 *Id.* 258; 74 Ark. 104; 110. *Id.* 425.

### STATEMENT OF FACTS.

R. W. Brown in his individual name and as administrator of the estate of T. J. Brown, deceased, brought this suit in equity against Fred Brown and the other heirs at law of T. J. Brown, deceased, and Haley Brown, widow of T. J. Brown, deceased, to cancel a deed exe-

cuted by T. J. Brown to Fred Brown on the ground that the deed was testamentary in character and operated as a cloud on the title to said lands.

T. J. Brown died in the fall of 1915, in possession of the lands which comprised 150 acres. The lands were worth at the time of his death about $2,500. At various times T. J. Brown in his lifetime had conveyed a portion of his lands to his other children.

On the part of the plaintiff it was shown that in July, 1909, Thos. J. Brown and Haley Brown, his wife, executed a mortgage on these lands to secure an indebtedness of $1,500. In December, 1914, the same parties executed another mortgage on the lands to the same creditor to correct a mistake made in the description of the lands in the first mortgage. It is also shown in behalf of the plaintiff that a short time before T. J. Brown died in the fall of 1915, he attempted to exchange the lands in controversy for a smaller tract of land and stated that he was going to use the difference in paying his debts. Several other witnesses testified that at various times for the last three years prior to his death, T. J. Brown claimed the lands in controversy as his own, and spoke of making some provision for his son Fred if he could dispose of these lands and pay his debts.

On the other hand Haley Brown, his widow, testified that her husband on the 3rd day of June, 1912, executed a deed to the lands in controversy to his son Fred Brown; that she signed the deed with him and they acknowledged it before I. L. Franks on the same day; that her husband handed the deed to her after its execution and acknowledgment and said: ''You know what to do with it;'' that she knew what he meant because he had told her before what to do with the deed if she outlived him; that she was to see that Fred Brown got the deed; that she placed the deed along with a deed of her own in a big pocketbook and kept it there until the death of her husband; that in a few days after her husband's death, she delivered the deed to Fred Brown; that her husband had been on a trade for a smaller place and stated that

he would make the trade if his son Fred was willing; that he finally abandoned the exchange of his property for the other lands because their owner valued them too highly.

I. L. Franks stated that he wrote the deed and that it was signed and acknowledged by T. J. Brown and his wife Haley Brown, that Mr. Brown then handed the deed to his wife saying: "This is Fred's. You know what to do with it." His wife took the deed.

Interrogatories propounded to Fred Brown were attached to the complaint. In answer to them Fred Brown stated that he was not present when the deed was executed by T. J. Brown and Haley Brown on the 2nd day of June, 1912; that after that day he had a conversation with his father about the execution of the deed; that his father said that he had given each of his other children a farm, that he gave this to him, Fred, to make him equal with the other children; that he learned of the deed a short time after its execution.

Haley Brown was the step-mother of Fred Brown and the latter was a minor at the time of the execution of the deed. T. J. Brown had a life insurance policy for $2,000 in which Fred was made the beneficiary. It was shown by several witnesses that T. J. Brown had said that he made Fred the beneficiary in this policy in order that the amount of it might pay off the mortgage on the land in controversy and leave it free for Fred. It was shown by three witnesses that shortly after the death of T. J. Brown, Haley Brown stated to one of them that her husband had not authorized her to deliver the deed to Fred Brown.

The chancellor found that the deed had been delivered and dismissed the complaint for want of equity. The case is here on appeal.

HART, J. (after stating the facts). (1) It is earnestly insisted by counsel for the plaintiff that even if the testimony of Mrs. Haley Brown be considered competent that the finding of the chancellor is against the pre-

ponderance of the evidence. It is settled in this State that if a deed, fully executed and so drawn as to convey a present title, is deposited by the grantor with a third person with directions to deliver it to the grantee after the death of the grantor, and the grantor reserves no dominion or control over the deed, the deed is not an attempted testamentary disposition but is effective as a conveyance of the title as of the date when the deed is deposited. *Fine* v. *Lasater,* 110 Ark. 425.

Tested by this rule we think the finding of the chancellor is not against the preponderance of the evidence. Fred Brown was a minor at the time his step-mother accepted the delivery of the deed for him. The deed was for his benefit and was sufficient to vest title in him. *Staggers* v. *White,* 121 Ark. 328.

(2)  Mrs. Haley Brown testified that after the deed had been executed and acknowledged by her husband and herself her husband handed the deed to her, saying that she knew what to do with it. In this she was corroborated by the person who wrote the deed and took her acknowledgment to it.   When asked if she knew what her husband meant when he said that she knew what to do with the deed when he handed it to her, she replied that she did; that he had already told her that he wished it delivered to his son, Fred, after his death. It is true three witnesses testified that a few days after her husband's death she told them that her husband did not authorize her to deliver the deed. This statement attributed to her was made in response to a question asked by one of the parties. They had come to see her about another matter and it is likely that she either misunderstood the question or answered it without considering carefully her words. In any event her statement made under the circumstances testified to by the witnesses is not sufficient to overcome her positive testimony to the effect that the deed was delivered to her for Fred Brown. The record shows that T. J. Brown had given each of his other children a farm and that it was his intention to give the lands in controversy to his

son Fred in order to place him on an equality with them. The testimony of the witnesses as to the declarations of T. J. Brown relative to the lands in controversy made after the execution of the deed to Fred Brown and in the absence of the latter is not admissible in evidence to defeat the deed to Fred Brown. *Welch* v. *Welch* 132 Ark. 227. When all the facts and circumstances adduced in evidence are read together and considered in the light of each other, it can not be said that the finding of the chancellor is against the preponderance of the evidence.

(3) It is next insisted that Mrs. Haley Brown is a party defendant to the suit and that under section 3095 of Kirby's Digest she can not testify against the plaintiff as to any transaction with or statements of T. J. Brown. Mrs. Haley Brown claims no interest in the lands in controversy. She is not interested in the result of the suit and is only a nominal defendant. Hence the provisions of the section just referred to have no application to her and do not render her testimony incompetent. *Walden* v. *Blassingame,* 130 Ark. 448.

(4) Neither was the testimony incompetent as being a confidential communication as between husband and wife within the meaning of the fourth subdivision of section 3095 of Kirby's Digest. Her testimony did not relate to private conversations between herself and her husband in his lifetime. She testified as to a transaction which occurred in the presence of a third person about a business matter which her husband directed her to do for him and which could not be regarded in any sense as a private communication between husband and wife. The matter was not in its nature private and could in no sense, under the circumstances, be termed the subject of confidential disclosure. *Nolen* v. *Harden,* 43 Ark. 307.

It follows that the decree must be affirmed.